UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
(AT COVINGTON)

| | |
|---|---|
| Tracy Simpson and Danika Lolles, individually and on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>Champion Petfoods USA Inc. and Champion Petfoods LP,<br><br>        Defendants. | Case No. _____<br><br><br>CLASS ACTION<br>(Jury Trial Demanded) |

# CLASS ACTION COMPLAINT

Plaintiffs Tracy Simpson ("Simpson") and Danika Lolles ("Lolles") (collectively "Plaintiffs"), individually and on behalf of all other similarly situated persons and entities, upon personal knowledge of facts pertaining to them and information and belief as to all other matters, by and through undersigned counsel, hereby file this Class Action Complaint against Defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively "Champion" or "Defendants"), and allege as follows:

## INTRODUCTION

1. Champion sells a variety of premium-priced dog foods throughout the United States. Its dry dog food products ("Products") are sold under the "Orijen" and "Acana" brand names. Champion's packaging prominently states that the Products are "Biologically Appropriate" and contain "fresh, regional ingredients." Champion's packaging further represents that Orijen "features FRESH, RAW or DEHYDRATED ingredients, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our

foods." Consumers pay a premium for what Champion advertises and labels as a premium product. A 25-pound bag of "Orijen Original Biologically Appropriate Dog Food" can cost $80 or more – up to four times the price of national brand competitors.

2. Contrary to Champion's representations regarding the Products, the Products contain excessive levels of harmful heavy metals, including arsenic, lead, cadmium, and mercury.

3. As a result of Champion's misrepresentations, Plaintiffs and other putative Class members were harmed by paying for the advertised Products and receiving only an inferior and contaminated product.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332(d), because this matter was brought as a class action under Fed.R.Civ.P. 23, at least one proposed Class member is of diverse citizenship from Champion, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

5. Venue is proper pursuant to 28 U.S.C. §1391, because a substantial part of the events and omissions giving rise to the claims occurred within Boone County, Kentucky and Defendant Champion Petfoods USA Inc. has its principal place of business in Logan County, Kentucky.

## THE PARTIES

6. Plaintiff Simpson resides in Boone County, Kentucky. She purchased Orijen dry dog food products, including Orijen Original and Acana, for her dog Brode from various pet food stores located in Florence, Kentucky including, but not limited to, Pet Supplies Plus, located

in Boone County. Plaintiff Simpson purchased the Product because she believed it was a healthy, quality product for her pet. Plaintiff Simpson would not have purchased the Product or would not pay as much for the Products were she aware of the excessively high levels of toxic heavy metals in the Products. Plaintiff Simpson did not receive what she paid for.

7. Plaintiff Lolles resides in Virginia Beach, Virginia. She purchased Orijen dry dog food products, including Orijen Original and Arcana, for her dog Josie from Care A Lot Pets and Dog Stuff located in Virginia Beach. Plaintiff Lolles purchased the Products because she believed they were healthy, quality products for her pet. Plaintiff Lolles would not have purchased the Products or would not pay as much for the Products were she aware of the excessively high levels of toxic heavy metals in the Products. Plaintiff Lolles did not receive what she paid for.

8. Defendant Champion Petfoods USA Inc. is incorporated in Delaware. Champion Petfoods USA Inc.'s headquarters is in Auburn, Kentucky.

9. Defendant Champion Petfoods LP is a Canadian limited partnership with its headquarters and principal place of business located in Edmonton, Alberta, Canada. Champion Petfoods LP owns, operates, and controls Champion Petfoods USA Inc.

10. Defendants formulate, develop, manufacture, market, and distribute dry dog food products under the brand names Orijen and Acana throughout the United States.

## FACTUAL ALLEGATIONS

11. Champion touts its products as "The World's Best Petfood." Champion produces a variety of dry dog foods under the Orijen and Acana brands and sells them throughout the United States, including within the Commonwealth of Kentucky.

12. The packaging of Orijen Original dry dog food touts the food as "the fullest expression of our biologically appropriate and fresh regional ingredients commitment," and further describes its supposed "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs – sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free."

13. The packaging further states that Orijen "features fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods."

14. The packaging of Acana dry dog food contains substantially similar representations. For example, the package for one variety of Acana dry dog food states that the product is "bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder – all delivered fresh from our region so they're loaded with goodness and taste," further boasting that all content is "from poultry, fish and eggs passed fit for human consumption."

15. Contrary to these representations, the Products are not composed of high quality ingredients fit for human consumption or biologically appropriate. To the contrary, the Products are contaminated with excessive quantities of heavy metals, including arsenic, lead, cadmium, and mercury.

16. According to a white paper[1] published by Champion, the Products contain the following average concentrations of heavy metals:

|  | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
|---|---|---|---|---|
| Average Concentration | 890 | 230 | 90 | 20 |

---

[1] http://www.championpetfoods.com/wp-content/themes/champion-petfoods/res/research/Champion-Petfoods-White-Paper-Heavy-Metals.pdf (last accessed March 26, 2018).

4

17. These concentrations are excessive, dangerous, and render Champion's representations regarding the Products, including the packaging of the Products, false and misleading.

18. For example, of the 11 pounds of "fresh, raw, or dehydrated animal ingredients" in a 13-pound bag of Orijen Original, the package claims to contain 8.5 pounds of chicken, turkey, and eggs – over 77% of the "fresh, raw, or dehydrated animal ingredients."

19. Chicken, turkey, and eggs consumed by humans contain no or only negligible amounts of arsenic, lead, cadmium, and mercury:[2]

|  | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
| --- | --- | --- | --- | --- |
| Chicken | 3 | 0 | .3 | 0 |
| Turkey | 6 | 0 | .1 | .1 |
| Eggs | 0 | .4 | 0 | .1 |

20. Arsenic, lead, cadmium, and mercury are toxic to dogs. A dog experiencing lead poisoning may exhibit vomiting, diarrhea, lethargy, loss of appetite, abdominal pain, regurgitation, weakness, hysteria, seizures, and blindness.[3] A dog experiencing arsenic poisoning may exhibit vomiting, diarrhea, abdominal pain, lethargy, staggering, bright red blood in feces, loss of consciousness, and death – or more subtle symptoms from chronic exposure like poor appetite and weight loss.[4] Heavy metals tend to accumulate in dogs and other animals, so long-term exposure to even small quantities of heavy metals can cause deleterious health effects.

21. Ingredients with the heavy metal concentrations found in Champion's Products are not suitable for consumption by humans and are not of the advertised quality.

---

[2] This table was prepared using data from the FDA's Total Diet Study, revised April 2017, available at: https://www.fda.gov/downloads/Food/FoodScienceResearch/TotalDietStudy/UCM184301.pdf (last accessed March 27, 2018). Data for chicken, turkey, and eggs comes from mean concentrations for TDS Food No. 240, 26, and 37, respectively.
[3] https://www.petmd.com/dog/conditions/digestive/c_dg_lead_poisoning (last accessed March 27, 2018).
[4] https://www.petmd.com/dog/conditions/digestive/c_dg_arsenic_poisoning (last accessed March 27, 2018).

## CLASS ACTION ALLEGATIONS

22. Plaintiffs bring this class action pursuant to Fed.R.Civ.P. 23(a) and (b)(3) on behalf of the following proposed class:

> All persons and entities who purchased a Champion dry dog food product for end use and not for resale within the Commonwealth of Kentucky (the "Class").

Excluded from the Class are Defendants, including any entity in which Defendants have a controlling interest, is a subsidiary of Defendants, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants.

23. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions involving the same claims.

**Numerosity – Federal Rule of Civil Procedure 23(a)(1)**

24. The members of the Class are so numerous that joinder of all members is impracticable. On information and belief, Class members number in the thousands.

**Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)**

25. This action involves the following common questions of law or fact which predominate over any potential questions affecting only individual Class members:

>    (a) Whether Champion engaged in the wrongful conduct as alleged herein;
>
>    (b) Whether Champion misrepresented the Products to Plaintiffs and the other Class members;
>
>    (c) Whether Champion breached the express warranties it made to Plaintiffs and the other Class members;
>
>    (d) Whether Champion breached implied warranties;

6

  (e)  Whether Plaintiffs and the other Class members are entitled to actual damages; and

  (f)  Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution, declaratory, and injunctive relief.

26. Champion engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other Class members. Similar or identical misrepresentations, business practices, and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate in this action.

**Typicality – Federal Rule of Civil Procedure 23(a)(3)**

27. Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs and all other Class members were damaged as a result of the uniform misconduct described above. Additionally, identical claims and legal theories are asserted on behalf of Plaintiffs and the other Class members.

**Adequacy – Federal Rule of Civil Procedure 23(a)(4)**

28. Plaintiffs' interests are aligned with and do not conflict with the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority – Federal Rule of Civil Procedure 23(b)(3)**

29. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, and other financial detriment suffered individually by Plaintiffs and the other Class members are relatively small compared to

the burden and expense that would be required to litigate their claims on an individual basis against Champion, making it impracticable for Class members to individually seek redress for Champion's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## **CLAIMS**

### **Count I**
**(Violation of the Kentucky Consumer Protection Act, KRS 367.120, *et seq.*)**

30. Plaintiffs adopt and reallege paragraphs 1 through 28 of this Class Action Complaint.

31. Plaintiffs and Class members are "persons" that engaged in a consumer transaction constituting trade and/or commerce with Defendants as those terms are defined by the Kentucky Consumer Protection Act, KRS 367.120, *et seq.* ("KCPA").

31. Pursuant to KRS 367.170, the KCPA applies to all unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce, including the sale of the products at issue in this matter.

32. Defendants misrepresented the quality of the Products and the ingredients contained therein on their labels in violation of the KCPA.

33. Defendants' deceptive, false and misleading statements deceived Plaintiffs and Class Members and deceived a substantial segment of the target consumer audience in violation of the KCPA.

34. Defendants' deception is material as it influenced purchasing and payment decisions.

35. Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendants' deceptive and unfair practices.

36. Defendants intended that Plaintiffs and other members of the Class rely on their misrepresentations, as their reliance was crucial to Defendants being able to command a premium price for the Products.

37. Through the conduct described herein, Defendants' actions have violated the KCPA.

38. As a proximate result of Defendants' misrepresentations and omissions, Plaintiffs and the other members of the Class suffered direct economic loss by purchasing the Products at a premium, and unwarranted, price. Had Plaintiffs and other members of the Class known the heavy metal content of the Products, they would not have bought the Products, or they would not have paid the premium price that they did.

39. Plaintiffs and Class Members are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

40. Defendants' conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiffs and members of the Class to punitive damages and attorneys' fees in an amount to be determined at trial.

### Count II
### (Breach of Express Warranty)

41. Plaintiffs adopt and reallege paragraphs 1 through 40 of this Class Action Complaint.

42. The packaging of the Products constituted an express warranty.

9

43. Kentucky Revised Statute Section 355.2-313 provides, in pertinent part:

(A) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

44. Defendants have breached this warranty in that the Products do not contain high quality healthy ingredients and instead contain excessive quantities of heavy metals. The Products are not biologically appropriate, and are not fit for human consumption.

45. Defendants are and have been aware of this defect in the Products and have chosen not to cure it.

46. Plaintiffs and other Class members have been damaged by Defendants' breach of its express warranty obligations.

## Count III
### (Breach of Implied Warranty)

47. Plaintiffs adopt and reallege paragraphs 1 through 46 of this Class Action Complaint.

48. Defendants, as the manufacturers, marketers, distributors, and sellers of the Products, are merchants.

49. Plaintiffs and the other Class members purchased the Products that were manufactured and sold by Defendants in consumer transactions. The implied warranty of merchantability attended the sale of the Products.

50. To be merchantable, the products must be at least such as:

    (a) Pass without objection in the trade under the contract description;

    (b) In the case of fungible goods, are of fair average quality within the description;

    (c) Are fit for the ordinary purposes for which such goods are used;

    (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

    (e) Are adequately contained, packaged, and labeled as the agreement may require; and

    (f) Conform to the promises or affirmations of fact made on the container or label if any.

51. The Products are not adequately contained, packaged and labeled because they are packaged as containing healthy, high quality ingredients, but instead contain excessive quantities of harmful heavy metals.

52. The Products do not conform to the promises and affirmations of facts made on their containers and labels because they do not consist of healthy, high quality ingredients that would be fit for human consumption as their packaging and labeling warrants.

53. The Products do not pass without objection in the trade under the contract description.

54. The Products are not of fair average quality within the description, are unfit for the ordinary purposes for which such goods are used, and are inadequately contained, packaged, and labeled.

55. Plaintiffs and the other members of the Class did not receive the Products as warranted. The products they purchased were worth less than the products they were promised and expected.

56. As a result of Defendants' breach of warranty, Plaintiffs and members of the Class suffered damages.

### Count IV
### (Fraudulent Omission)

57. Plaintiffs adopt and reallege paragraphs 1 through 56 of this Class Action Complaint.

58. Defendants represented on the packaging of Orijen Original dry dog food that it is "the fullest expression of our biologically appropriate and fresh regional ingredients commitment," and further describes its supposed "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs – sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free."

59. The packaging further represents that Orijen "features fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods."

60. The packaging of Acana dry dog food contains substantially similar representations. For example, the package for one variety of Acana dry dog food states that the product is "bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder – all delivered fresh from our region so they're loaded with

goodness and taste," further boasting that all content is "from poultry, fish and eggs passed fit for human consumption."

61. Contrary to these representations, Defendants knew and failed to disclose that the Products are not composed of high quality ingredients fit for human consumption or biologically appropriate. Rather, the Products are contaminated with excessive quantities of heavy metals, including arsenic, lead, cadmium, and mercury.

62. The foregoing material facts were intentionally withheld from Plaintiffs and other members of the Class who purchased the Products.

63. Plaintiffs and other members of the Class suffered damages as a result of their purchase of the Products.

### Count V
### (Unjust Enrichment)

64. Plaintiffs adopt and reallege paragraphs 1 through 63 of this Class Action Complaint.

65. Plaintiffs and other members of the Class purchased Defendants' products to their detriment because they paid a premium price expecting the goods to conform to the representations on the Products' labels that the Products contained high quality, healthy ingredients that would be fit for human consumption. Had Plaintiffs and the other members of the Class known that the Products contained excessive quantities of heavy metals, they would not have paid the price they did. Plaintiffs and the other members of the Class did not receive the benefit of the bargain.

66. Defendants knew of the actual ingredients of, and the percentage of heavy metals contained in, the Products. Defendants sold the Products at a premium price. Defendants are now retaining a benefit to the detriment of Class members. Allowing Defendants to retain the benefits

of their inflated sales price while Plaintiffs and other members of the Class have the detriment of having paid a price they would not have paid had they not been deceived by Defendants' labels, violates the fundamental principles of justice, equity, and good conscience.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court enter an Order:

    A.    Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

    B.    Appointing Plaintiffs as Class Representatives and undersigned counsel as Class Counsel;

    C.    Finding that Defendants engaged in the unlawful conduct alleged herein;

    D.    Awarding Plaintiffs and the other Class members actual, compensatory, and consequential damages;

    E.    Awarding Plaintiffs and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

    F.    Awarding Plaintiffs and the other Class members reasonable attorneys' fees, costs, and expenses as provided by the KCPA; and

    G.    Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs demand a trial by jury on all claims so triable.

|  |  |
|---|---|
| Dated: May 3, 2018 | /s/ Robert R. Sparks |
|  | Robert R. Sparks (Ky. Bar #83685) |
|  | Richard S. Wayne |
|  | Joseph J. Braun |
|  | STRAUSS TROY |
|  | 150 East Fourth Street |
|  | Cincinnati, OH  45202-4018 |
| OF COUNSEL: | (513) 621-2120 – Telephone |
|  | (513) 629-9426 – Facsimile |
| Phyllis E. Brown | E-mail: *rrsparks@strausstroy.com* |
| Adam S. Brown | E-mail: *rswayne@strausstroy.com* |
| BROWN LAW FIRM LLC | E-mail: *jjbraun@strausstroy.com* |
| 250 East 5th Street, Suite 1500 |  |
| Cincinnati, OH  45202 |  |
| (513) 878-2700 – Telephone |  |
| (513) 241-6464 – Facsimile |  |
| E-mail: *pbrown@blfohio.com* |  |
| E-mail: *abrown@blfohio.com* |  |

Ben Barnow
Erich P. Schork
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
(312) 621-2000 – Telephone
(312) 641-5504 – Facsimile
E-mail: *b.barnow@barnowlaw.com*
E-mail: *e.schork@barnowlaw.com*

ORIJEN-KY_Complaint 5.3.18.docx