# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION AT COVINGTON

**CIVIL ACTION No. 2:18-CV-74 (WOB-CJS)**

**TRACY SIMPSON ET AL.**                                    **PLAINTIFFS**

**VS.**                  <u>**MEMORANDUM OPINION AND ORDER**</u>

**CHAMPION PETFOODS USA, INC. ET AL.**                **DEFENDANTS**

This proposed class action involves alleged misrepresentations on the package labeling for dog food. Plaintiffs allege in particular that Defendant Champion Petfoods, Inc. misrepresented the quality of its premium dry dog food by labeling it as containing "fresh, raw, or dehydrated ingredients" that are "regional" and "deemed fit for human consumption prior to inclusion."

Plaintiffs assert the following six (6) counts:

Count I:      Violation of the Kentucky Consumer Protection Act, KRS § 367.120 *et seq.*

Count II:     Violation of the Virginia Consumer Protection Act of 1977, Va. Code § 59.1-196 *et seq.*

Count III:    Breach of express warranty under Kentucky law, KRS § 355.2-313

Count IV:    Breach of express warranty under Virginia law, Va. Code § 8.2-313

Count V:     Breach of implied warranty

Count VI:     Fraudulent omission

Count VII:    Unjust enrichment

On January 8, 2019, this Court heard oral argument on Defendants' first motion to dismiss. At the end of the hearing, Plaintiffs' counsel made an oral request to amend the complaint. (Doc. 26). That request was granted. This matter is now before the Court on Defendants' motion to dismiss the amended complaint (Doc. 32). The Court dispenses with oral argument at this stage because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, the matter is ripe for disposition.

For the reasons that follow, Defendants' motion to dismiss will be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Champion Petfoods LP owns and controls Defendant Champion Petfoods USA, Inc. (collectively "Champion"). Champion manufactures, markets, and sells premium-priced dog food throughout the United States, including in Kentucky and Virginia, where, respectively, Plaintiff Tracy Simpson and Danika Lolles purchased Champion's dog food from various third-party pet food stores. (Doc. 29, ¶¶ 6–11).

Champion's dry dog food products are sold under two brand names: "Orijen" and "Acana," both of which contain substantially similar representations on the package label. *Id.* at ¶¶ 1, 11, 15.

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

## A.       Representations on the Package Label

Orijen Original is labeled on the front of the package as "BIOLOGICALLY APPROPRIATE™ DOG FOOD," a purported trademark phrase. (Doc. 32-2 at 1); (Doc. 29, ¶ 13).[1]

On the back of the package, featured prominently under the caption "TRUSTED EVERYWHERE," it reads:

> ORIJEN IS THE FULLEST EXPRESSION OF OUR BIOLOGICALLY APPROPRIATE™ AND FRESH REGIONAL INGREDIENTS COMMITMENT. ORIJEN ORIGINAL features unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs—sustainably farmed or fished in our region and delivered daily, FRESH or RAW and preservative-free, so they're bursting with goodness and taste.

(Doc. 32-2 at 2) (emphasis in original); (Doc. 29, ¶ 13). The package label also represents that Orijen contains "NO RENDERED POULTRY, FISH OR MEAT MEALS," and instead, "features richly nourishing ratios of poultry, organs and cartilage" and "FRESH, RAW or DEHYDRATED ingredients, from minimally processed poultry fish and eggs that are deemed fit for human consumption **prior to inclusion in our foods**." (Doc. 32-2 at 1–2) (emphasis added); (Doc. 29, ¶ 13). Although these statements speak in general terms, consumers are invited to "[r]ead [the] ingredients" in the list conspicuously printed on the package.[2]

---

[1] The phrase "biologically appropriate" is represented to mean "NOURISH AS NATURE INTENDED – ORIJEN mirrors the richness, freshness and variety of WholePrey™ meats that dogs are evolved to eat." (Doc. 32-2 at 2); (Doc. 29, ¶ 13).

[2] The list of specific ingredients printed on the Orijen Original package includes:

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

The package further represents the origin of the product ingredients. Under the heading "FRESH REGIONAL INGREDIENTS" it states: "GROWN CLOSE TO HOME – We focus on local ingredients that are ethically raised by people we know and trust, and delivered to our kitchens fresh or raw each day." (Doc. 32-2 at 2); (Doc. 29, ¶ 13). This theme is reinforced by two similar statements: (a) "INGREDIENTS WE LOVE FROM PEOPLE WE KNOW AND TRUST"; and (b) "FRESH OR RAW INGREDIENTS FROM LOCAL FARMS AND WATERS." (Doc. 32-2 at 2); (Doc. 29, ¶ 13). In the same vein, under the heading "NEVER OUTSOURCED," the label notes that the product is "PREPARED EXCLUSIVELY IN OUR DOGSTAR KITCHENS – We don't make foods for other companies and we don't allow our foods to be made by anyone else." (Doc. 32-2 at 2); (Doc. 29 at 7). And more particularly, "MADE IN OUR USA KENTUCKY KITCHENS" is printed on the package. (Doc. 32-2 at 1–2); (Doc. 29, ¶ 13).

## B.     Allegations as to the Falsity of Champion's Representations

Plaintiffs allege that Champion's representations are false and deceptive. First, Plaintiffs claim Champion's products contain "high levels of heavy metals."

---

"deboned chicken, deboned, turkey, yellowtail flounder, whole eggs, whole atlantic mackerel, **chicken liver, turkey liver, chicken heart, turkey heart, whole atlantic herring, dehydrated chicken, dehydrated turkey, dehydrated mackerel, dehydrated chicken liver, dehydrated turkey liver, . . . chicken necks, chicken kidney, . . . ground chicken bone, chicken cartilage, turkey cartilage, . . . freeze-dried chicken liver, freeze-dried turkey liver**" and various vegetables, lentils, and seeds. (Doc. 32-2 at 2).

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

(Doc. 29, ¶ 25). As factual backing for this assertion, Plaintiffs reference Champion's own public disclosure, the "White Paper," and include a table from that publication listing the average concentration of arsenic, lead, cadmium, and mercury in ***the finished product of*** Acana and Orijen Original. (Doc. 29, ¶ 25); (Doc. 32-1 at 2).[3] Plaintiffs' version of the table omits the column that purports to provide the maximum tolerable limits ("MTLs") set by the Food and Drug Administration ("FDA") and the National Research Council ("NRC")—which indicates that the heavy metals in Champion's products are substantially below the MTLs.

Notwithstanding, Plaintiffs aver that the reported concentrations of these metals "are excessive," "not suitable for consumption by humans and are not of the quality represented to consumers," and therefore "render Champion's representations . . . false and misleading." (Doc. 29, ¶¶ 26, 30). In support, Plaintiffs cite to the FDA's "Total Diet Study"[4] and include a table with figures from the study indicating the concentration of the heavy metals found in chicken, turkey, and eggs

---

[3] Plaintiffs have converted the unit of measurement for the figures in the White Paper from milligrams (mg) per kilogram to micrograms (ug) per kilogram by multiplying the figures by 1,000. *Compare* (Doc. 32-1 at 2), *with* (Doc. 29, ¶ 25).

[4] (Doc. 29 at 11 n.1); U.S. FOOD & DRUG ADMIN., TOTAL DIET STUDY ELEMENTS RESULTS SUMMARY STATISTICS: MARKET BASKETS 2006 THROUGH 2013 (rev. 2017) (2014), https://www.fda.gov/media/77948/download (last visited Apr. 30, 2019) [hereinafter "FDA Diet Study"]. Turkey, eggs, and chicken are Food Nos. 26, 37, and 240, respectively, in the FDA's table. The table also provides data for certain types of fish, such as salmon and tuna, in Food Nos. 318 and 340, respectively.

consumed by humans. *Id.* at ¶ 28.[5] The table, however, omits fish, which according to the package label, constitutes 2.5 pounds of the 11 pounds of "fresh, raw, or dehydrated animal ingredients" in a 13-pound bag of Orijen Original. *Id.*; (Doc. 32-2 at 2).

Second, Plaintiffs allege that Champion's products: (1) are "made primarily from animal byproducts"; (2) "contain ingredients of an inferior quality than those represented" and that Champion "knowingly uses expired ingredients"; (3) include ingredients that are "heavily processed"; (4) contain "meal ingredients and fats" obtained from "unsanitary pet food rendering facilities around the world" or rendering facilities that also process "animals that died by means other than slaughter and diseased or spoiled meats"; (5) contain "a variety of ingredients that are frozen"; (6) "routinely" include "'regrinds' (*i.e.*, items that were not fit to be sold after their original preparation)"; (7) are "contaminated with excessive quantities of hair (for one ingredient, Champion's own specification allows for 30 grams per pound to consist of hair), insects, plastic ear tags from livestock, feathers, and bones"; (8) lack "nutritious muscle meats" and instead "include cartilage, bone, [and] filtering organs";[6] and (9) incorporate ingredients that arrive with bills of lading designating

---

[5] The unit of measurement for the figures in the FDA Study have also been converted from milligrams (mg) per kilogram to micrograms (ug) per kilogram by multiplying the figures by 1,000. *Compare FDA Diet Study*, *supra* note 4, *with* (Doc. 29, ¶ 28).

[6] This is consistent with the package label. *See supra* note 2.

it as "INEDIBLE" and "NOT FOR HUMAN CONSUMPTION." (Doc. 29, ¶¶ 2, 16–17, 21–24).

Lastly, Plaintiffs allege Champion misrepresented that it uses "regional" ingredients from "PEOPLE WE TRUST." *Id.* at ¶¶ 2, 18–19. Plaintiffs aver this is false because: (1) Champion "imports most of its ingredients from outside the Commonwealth of Kentucky," a "substantial portion" of which "are imported from outside the United States and from as far away as New Zealand, Morocco, Denmark, and Peru," and "the few ingredients Champion sources from Kentucky are first shipped over 1,000 miles away to New Bedford, Massachusetts for further processing before being shipped to Champion's Kentucky facility"; and (2) Champion obtains the ingredients it uses "through a complex, convoluted supply chain where Champion may be unaware of the origin of the ingredient." *Id.* at ¶¶ 2, 18–19.

In short, Plaintiffs allege that contrary to the package labeling, the "ingredients" prior to inclusion in Champion's products "are not suitable for consumption by humans and are not of the quality represented to consumers." *Id.* at ¶¶ 21, 30. According to Plaintiffs, their injury stems from the fact that they believed Champion's products were "healthy, quality product[s] for [their] pet[s]," and they paid a premium price they would not have paid had they been aware of the alleged facts pertaining to Champion's products. *Id.* at ¶¶ 3, 6–7. They seek compensation for their loss and classwide treatment for the thousands of estimated class members in Kentucky and Virginia. *Id.* at ¶¶ 31, 33.

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint may be deficient for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

On a Rule 12(b)(6) motion to dismiss, "all factual allegations in the complaint must be presumed to be true" and the court must draw all "reasonable inferences" in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To that end, a court must judge the sufficiency of a complaint under a two-pronged approach: (1) disregard all "legal conclusions" and "conclusory statements"; and (2) determine whether the remaining "well-pleaded factual allegations," accepted as true, "plausibly give rise to entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009).

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

Accordingly, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. That is, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ANALYSIS

### I.  Materials Properly Before the Court

On a motion to dismiss, materials outside the pleadings are generally not considered. Fed. Rule Civ. P. 12(d); *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). But "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, **so long as they are referred to in the complaint and are central to the claims contained therein**, without converting the motion to one for summary judgment." *E.g.*, *Stein v. hhgregg, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017) (emphasis added) (citation omitted). Put simply, "if a plaintiff references

or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion . . . Fairness and efficiency require this practice." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

Here, the White Paper published by Champion, the FDA Diet Study, and the package label are referenced in the First Amended Complaint (the "Complaint") and are central to Plaintiffs' claims. (Doc. 29, ¶¶ 13–15, 25–28; *id.* at 11 n.1). That Plaintiffs did not attach these documents as exhibits to the Complaint is irrelevant. *Stein*, 873 F.3d at 528 (plaintiff's failure to attach compensation policy to complaint did not preclude its consideration in resolving Rule 12(b)(6) motion because it was "central to plaintiffs' case" in that it was referenced in the complaint).

"While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 797 (6th Cir. 2012) (citation and internal quotation marks omitted). Plaintiffs do not dispute the validity of the White Paper. But, "[o]ther than the raw numbers," Plaintiffs do dispute the statements and MTLs in the White Paper. (Doc. 35 at 6–7).

Therefore, the Court may not consider information in the White Paper beyond the data included in the Complaint. *Mediacom Southeast LLC v. BellSouth Telcoms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012) (court could not refer to the settlement

agreement even though it was referred to in the complaint because the parties disputed the "factual contents" of the settlement agreement and "[i]t would seem improper for the district court to credit the factual recitations in the agreement—a self-serving document drafted by the defendant . . . and to thus reject the well-pleaded facts in the complaint"); *Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013) (plaintiff disputed "the validity of the statements in the document relied upon by Defendant").

By contrast, there is no dispute as to the factual contents of the package label or the validity of the FDA Diet study. As such, these documents are properly before the Court and may be considered. Therefore, in deciding Champion's motion, if the allegations of the Complaint are "contradicted by documents attached to or necessarily implicated by the pleadings, the latter controls over the former and a Rule 12(b)(6) dismissal may be based on the documents." *See, e.g.*, 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34(2) (Matthew Bender 3d ed. 2018) (emphasis added) [hereinafter "MOORE'S"]; *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015) (written instrument contradicted allegations in complaint and court considered attachment as trumping allegations), *cert. denied*, 137 S. Ct. 617 (2017).

## II. Champion's Motion to Dismiss

The parties evidently agree that Kentucky law applies to Plaintiff Simpson's

claims and Virginia law applies to Plaintiff Lolles' claims.[7] But there is no constitutional problem "in applying [another state's] law if it is not in conflict with that of any other jurisdiction connected to this suit." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) (citation omitted).

In this matter, the privity requirement is the only real difference between Virginia and Kentucky law. Otherwise, there is no conflict. As such, the sufficiency of Simpson's and Lolles' claims will be evaluated, respectively, under Kentucky and Virginia law where the claim asserted implicates the privity requirement.

## A.    The Kentucky Consumer Protection Act ("KCPA") (Count I)

In Count I, Simpson alleges Champion violated the KCPA, KRS § 367.120 *et seq.*, by virtue of the alleged misrepresentations on Champion's product labels. (Doc. 29, ¶¶ 39–50).

---

[7] *See also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011) (concluding that "the consumer-protection laws of the potential class members' home States will govern their claims" because "the idea that one state's law would apply to claims by consumers throughout the country . . . is a novelty." (citation and internal quotation marks omitted)); *Corder v. Ford Motor Co.*, 272 F.R.D. 205, 212–213 (W.D. Ky. 2011) (observing that state consumer protection laws vary significantly and concluding that the law of the states in which the putative class members purchased their vehicles must be applied). *But see Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009) ("Kentucky has ample case law explaining that the 'any significant contacts' test applies to tort actions, whereas the Restatement's 'most significant contacts' test applies to contract disputes."); *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) (holding that in tort cases, "significant contacts—not necessarily the most significant contacts—with Kentucky" dictates that "Kentucky law should be applied").

The KCPA was enacted "to give Kentucky consumers the broadest possible protection for allegedly illegal acts." *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988). It prohibits "[unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KRS § 367.170. To that end, the KCPA provides a private right of action for any person who (1) purchases or leases goods or services (2) for personal, family or household purposes and (3) is injured as a result of a seller's prohibited practice or act. KRS § 367.220(1).[8]

Champion argues that the KCPA requires privity. (Doc. 32 at 12–14). Plaintiffs disagree and cite to a handful of federal district court cases. (Doc. 35 at 10). The Court agrees with Champion. "An action under the KCPA requires privity of contract between the parties." *PNC Bank, N.A. v. Merenbloom*, Nos. 15-6361, 16-5277, 2017 WL 3973962, at *3 (6th Cir. June 16, 2017) (citing *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992)). Simpson's KCPA claim therefore fails because she lacks privity with Champion.

---

[8] In pertinent part, KRS § 367.220(1) states:

> "Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action . . . to recover actual damages. The court may, in its discretion, award actual damages and may provide such equitable relief as it deems necessary or proper. Nothing in this subsection shall be construed to limit a person's right to seek punitive damages where appropriate.

*Skilcraft* is the seminal Kentucky case interpreting the scope of KRS § 367.220.

The *Skilcraft* court concluded that:

> [A] subsequent purchaser may not maintain an action against a seller with whom he did not deal or who made no warranty for the benefit of the subsequent purchaser. **The language of the statute plainly contemplates an action by a purchaser against his immediate seller. . . The legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act.** We find distinguishable situations such as that presented in *Ford Motor Co. v. Mayes*, Ky. App., 575 S.W.2d 480 (1978), where the defendant (Ford Motor Company) provides warranties to the ultimate purchaser to repair the item purchased.

836 S.W.2d at 909 (emphasis added).

Despite the clear holding in *Skilcraft* requiring privity, one district court, *Naiser v. Unilever United States, Inc.*, 975 F. Supp. 2d 727 (W.D. Ky. 2013), broke ranks in 2013. *Id.* at 743 (citing *Skilcraft*, 836 S.W.2d at 909). *Naiser* interpreted the last sentence of the above excerpt from *Skilcraft* and held that a plaintiff may also bring a KCPA claim where a defendant has "made valid express warranties for Plaintiffs' benefit." *Naiser*, 975 F. Supp. at 743; *see id.* at 740.

*Naiser* overextends the intent of the Kentucky legislature and the holding in *Skilcraft*. Indeed, only a few courts have followed *Naiser*. *Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 750–51 (W.D. Ky. 2014); *Miller v. Coty, Inc.*, No. 3:14-cv-00443, 2018 WL 1440608, at *14 (W.D. Ky. Mar. 22, 2018).[9]

---

[9] Simpson also cites to *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 793 (W.D. Ky. 2003), a pre-*Naiser* case holding that the lack of privity in the technical sense did not foreclose plaintiffs' KCPA claim. But *Stafford* has no application here. In

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

"[W]here a state appellate court has resolved an issue to which the high court has not spoken," the Sixth Circuit instructs courts to "treat [those] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently." *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 448 n.3 (6th Cir. 2000) (citation and internal quotation marks omitted). Here, nothing suggests that the Kentucky Supreme Court would apply any rule other than that which is stated in *Skilcraft*. This Court therefore declines to follow *Naiser* and will instead adhere to *Skilcraft*.

Indeed, after *Skilcraft*, numerous Kentucky Courts of Appeals have cited *Skilcraft* and interpreted the text of the KCPA "to mean that an individual must be a purchaser with privity of contract in order to have standing to bring an action under the [KCPA]." *E.g.*, *Williams v. Chase Bank USA, N.A.*, 390 S.W.3d 824, 829 (Ky. Ct. App. 2012); *Arnold v. Microsoft Corp.*, No. 2000-CA-002144, 2001 WL 1835377, at *7 (Ky Ct. App. Nov. 21, 2001); *Potter v. Bruce Walters Ford Sales, Inc.*, 37 S.W.3d 210, 213 (Ky. Ct. App. 2000); *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538,

---

*Stafford*, an individual had obtained a credit card in the plaintiff's name through the defendant-bank, and the bank then proceeded to use "phony" representations and "incessant" tactics to collect the debt incurred. *Id.* at 779–81. The conclusion that privity was not necessary was premised primarily on "the Bank's own continued assumption of privity" and the fact that "for all practical purposes [plaintiff] was treated as [an immediate purchaser]." *Id.* at 793. In contrast, Champion has never claimed to be in privity with Plaintiffs and the facts here bear no resemblance to the circumstances in *Stafford*.

546 (Ky. Ct. App. 2013) ("Claims may only be brought under the KCPA by individuals who personally purchase goods or services from a merchant.").

The Sixth Circuit and the majority of the federal district courts have also followed suit in holding that privity is required under the KCPA. *See, e.g.*, *Yonts v. Easton Tech. Prods., Inc.*, 676 F. App'x 413, 420 (6th Cir. 2017) (rejecting the argument that a second-hand purchaser may sue a manufacturer because "[i]f a consumer so far removed from the manufacturer could claim express-warranty or KCPA protection, . . . [the statutory] limitations would be meaningless"); *Merenbloom*, 2017 WL 3973962, at *3 (6th Cir. June 16, 2017).[10] Thus, *Naiser* is an outlier.[11]

Here, Simpson is not in privity with Champion. Simpson did not purchase dog food products from Champion. Rather, as the Complaint plainly states, Simpson "purchased Orijen dry dog food products . . . from various pet food stores" in Kentucky. (Doc. 29, ¶ 6). Because Simpson's allegations do not involve "an action by a purchaser

---

[10] *See, e.g.*, *McIntosh v. E-Backgroundchecks.com, Inc.*, No. 5:12-310-DCR, 2013 WL 1187038, at *5 (E.D. Ky. Mar. 20, 2013); *Day v. Fortune Hi-Tech Marketing, Inc.*, No. 10-cv-305-GFVT, 2014 WL 4384443, at *9 (E.D. Ky. Sept. 3, 2014) (collecting additional cases); *Morcus v. Medi-Copy Servs.*, 2017 U.S. Dist. LEXIS 195485, at *19 (E.D. Ky. Nov. 28, 2017); *House v. Bristol-Myers Squibb Co.*, No. 3:15-CV00894-JHM, 2017 WL 55876, at *7 (W.D. Ky. Jan. 4, 2017).

[11] To the extent there is any merit to the reasoning in *Naiser*, this is not a case where a defendant made a warranty "to the ultimate purchaser to repair the item purchased." *Skilcraft*, 836 S.W.2d at 909; *cf. Naiser*, 975 F. Supp. 2d at 743. Moreover, as detailed below, there is a substantial difference between the representations in this case and those at issue in *Naiser*. *See infra* Part II.C.ii.

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

against his immediate seller," Simpson lacks privity of contract. Therefore, Simpson has no claim under the KCPA. Count I accordingly will be dismissed with prejudice.

## B.     The Virginia Consumer Protection Act ("VCPA") (Count II)

The VCPA prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code. § 59.1-200(A). A "supplier" is defined by the VCPA to include "a seller . . . or **a manufacturer**, . . . who advertises and sells, . . . goods or services to be resold . . . by other persons in consumer transactions." Va. Code § 59.1-198(C) (emphasis added). The VCPA therefore applies to Lolles' manufacturer-consumer relationship with Champion.

To state a claim under the VCPA, a plaintiff must allege: "(1) fraud, (2) by a supplier, (3) in a consumer transaction." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456 (E.D. Va. 2009). In misrepresentation cases, a plaintiff must also prove "the elements of reliance and damages." *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014); *Curtis v. Propel Prop. Tax Funding, LLC*, No. 3:16-cv-00731-JAG, 2018 WL 717006, at *3 (E.D. Va. Feb. 5, 2018).[12] All of these elements must be pled with particularity in accordance with Fed. R. Civ. P. 9(b); that is, a plaintiff must state "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he

---

[12] The VCPA, however, "does not require the consumer to prove in every case that misrepresentations were made knowingly or with the intent to deceive." *Owens*, 764 S.E.2d at 260.

obtained thereby." *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015) (citation and internal quotation marks omitted).

Defendants contend Lolles has failed to allege reliance. Here, Lolles alleges she purchased Champion's products "because she believed they were healthy, quality products for her pet" and otherwise would not have done so "if she was aware that the representations of Champion" were "false and deceptive." (Doc. 29, ¶ 7). This allegation, coupled with the specific statements Lolles identified on the package label and the allegations regarding how these statements constitute misrepresentations, is sufficient to satisfy the demands of Rule 9. *Id.* at ¶¶ 13–30. Accordingly, Count II stands.

### C.      Simpson's Breach of Express Warranty Claim (Count III)

Express warranties are created under Kentucky law by: (1) an "affirmation of fact or promise" or "description of the goods"; (2) **made by the seller to the buyer**"; (3) "which relates to the goods"; and (4) "becomes part of the basis of the bargain." KRS § 355.2-313 (emphasis added). For a representation to be actionable as an express warranty, the seller's affirmations must rise to "something more than ordinary puffing, sales talk, or expressions of opinion." *Biszantz v. Thoroughbreds*, 620 F. App'x 535, 541 (6th Cir. 2015); *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982); KRS § 355.2-313(2) ("[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."). The test is "whether the

seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment." *Overstreet*, 669 F.2d at 1290–91 (quoting *Wedding v. Duncan*, 220 S.W.2d 564, 567 (Ky. 1949)).

The defect in Count III is not whether Champion's package label constitutes puffery or a commendation of the goods. The problem, again, is that Simpson's breach of warranty claim is foreclosed by the privity requirement under Kentucky law.

### i. Simpson Lacks Privity

The Sixth Circuit in applying Kentucky law succinctly summarized the privity requirement in warranty claims:

> Under Kentucky law, liability for breach of warranty is governed by the terms of the contract and statutory provisions of Kentucky's Uniform Commercial Code. *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985). [Where] there [i]s no contract between the [parties], Kentucky Revised Statute § 355.2-318 controls [the] cause of action. Under this statute, **claims for breach of express or implied warranties may proceed only where there is privity between the parties.** *Real Estate Mktg. v. Franz*, 885 S.W.2d 921, 926 (Ky. 1994).

*Waterfill v. Nat'l Molding Corp.*, 215 F. App'x 402, 405 (6th Cir. 2007) (emphasis added) (holding that "privity existed only between [defendant] and its distributors, who were the immediate purchasers of its [product]."). This statement of the law is underscored by the standards pronounced in the cases the *Waterfill* Court cited.

In *Williams v. Fulmer*, the Kentucky Supreme Court explained that "[i]f liability is based on sale of the product, it can be extended beyond those persons in

privity of contract only by some provision of the U.C.C. as adopted in Kentucky." 695 S.W.2d at 413. "The only provision of the U.C.C. extending breach of warranty," the court continued, "is KRS 355.2-318" and it applies "in injury cases." 695 S.W.2d at 413.[13] Although the claims in *Williams* stemmed from an allegedly defective motorcycle helmet that was worn by the passenger in a fatal accident, *id.* at 412, the court concluded that warranty claims "are limited to the purchaser and to 'any natural person who is in the family or household of [the] buyer or who is a guest in his home.'" *Id.* at 414 (quoting KRS § 355.2-318). The Court was emphatically clear that it had "no precedent for changing statutory law by court decision as we do for common law negligence rules" and "no precedent for abolishing privity where liability is based on the sales contract." *Id.*

Then, in *Real Estate Mktg. v. Franz*, 885 S.W.2d 921 (Ky. 1994), the Kentucky Supreme Court declined to follow other states that had abolished the privity requirement, and instead, reaffirmed the privity requirement in a purely commercial

---

[13] In pertinent part, KRS § 355.2-318, titled "**Third party beneficiaries of warranties express or implied**," states:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and **who is injured in person** by breach of the warranty.

KRS § 355.2-318 (emphasis added).

case. *Id.* at 925–26. There, defendant built a home and sold it; the purchasers then sold the home to plaintiffs. *Id.* at 922. When plaintiffs noticed mold, mildew, and warped flooring, they sued the defendant-homebuilder. *Id.* Citing to *Williams v. Fulmer*, the *Franz* Court rejected plaintiffs' breach of warranty claim and stated the following:

> [T]his Court is not prepared, as a matter of judicial policy, to extend the theory of a warranty implied in law beyond the kind of warranty statutorily created in Kentucky's version of the U.C.C. A step of this nature is a public policy to be decided by the legislature. We find no public policy to extend warranty protection in the U.C.C.

*Id.* at 926. The court's holding is unequivocal.

Here, as noted above, it is clear from the face of the Complaint that Simpson lacks privity. Moreover, Simpson cannot shoehorn her warranty claim into the broader protections under KRS § 355.2-318 because this is not a personal injury case, and even if it was, Simpson does not qualify as a "person who is in the family or household of [the] buyer or who is a guest in his home." KRS § 355.2-318. To be clear, Simpson does not allege any harm to her pets. Nor does she claim that she purchased a bag of dog food containing any of the alleged impurities (*e.g.*, hair, insects, livestock tags). Rather, she alleges Champion misrepresented its dog food as a high-quality product containing "fresh," "raw," "regional" ingredients when in reality it contains undisclosed heavy metals and contaminants. Indeed, according to Simpson, she was harmed because the products she paid for and received were "*less valuable than as marketed and represented to them and other consumers.*" (Doc. 29, ¶ 3) (emphasis

added). Assuming this to be true, Simpson nonetheless lacks privity and therefore Count III must be dismissed.

### ii.    The *Naiser* Case

In support of her breach of warranty claim, Simpson again urges this Court to follow *Naiser*, (Doc. 35 at 12–13), which allowed a breach of express warranty claim to go forward despite that privity was absent. 975 F. Supp. 2d at 738–40. There, the plaintiffs alleged they purchased a hair straightening product from Rite-Aid and Target that caused "hair loss" and "scalp burns." *Id.* at 731–32. The label on the product represented that (1) the product was a "smoothing" treatment; (2) its effects would last "up to 30 days" when in reality the "effects could be expected to last for months"; and (3) the product contained "no formaldehyde" when in fact it contained "a chemical that is known to release formaldehyde" upon its use.  975 F. Supp. 2d at 734, 741. For several reasons, this Court will not follow *Naiser*.

First, *Naiser* is readily distinguishable by its facts. There, the plaintiffs suffered personal injuries, whereas Simpson's alleged injury is purely economic. Moreover, in contrast to the misrepresentations in *Naiser*, here, the package label does not contain any variant of the phrase "no heavy metals." But that is the core premise of Simpson's claim. To reach the result Simpson urges the Court to reach, one must read more information into the package labeling than what it states. *See Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 395 (6th Cir. 2013) (finding no merit to express-warranty claims where plaintiff attacked adequacy of drug label, rather

than a false affirmation).

Second, *Naiser* is based on an unsupported extension of Kentucky law. *Naiser* cited to two of the same cases discussed above, *Waterfill v. Nat'l Molding Corp.*, 215 F. App'x 402, 405 (6th Cir. 2007) and *Williams v. Fulmer*, 695 S.W.2d 411 (Ky. 1985), but ignored *Real Estate Mktg. v. Franz*, 885 S.W.2d 921 (Ky. 1994). *See Naiser*, 975 F. Supp. 2d at 738, 740. *Naiser* erroneously assumed that because "Kentucky courts have not considered any cases involving direct representations to consumers," it was authorized to proceed to "consider how other jurisdictions have dealt with such promises." *Id.* at 739–40. In doing so, the *Naiser* Court disregarded a clear statement of Kentucky law in binding precedent simply because the cases were not factually identical.

Lastly, *Naiser* grossly misapprehended three cases applying Kentucky law. 975 F. Supp. 2d at 738–40. The three cases being *Levin v. Trex Co., Inc.*, No. 3:10-cv-692–CRS, 2012 WL 7832713 (W.D. Ky. Mar. 5, 2012); *Williams v. Volvo-White*, 2003 WL 22681457 (Ky. App. Nov. 14, 2003); and *Gooch v. E.I. Du Point de Nemours & Co.*, 40 F. Supp. 2d 863 (W.D. Ky. 1999).

In the first case, *Levin v. Trex Co., Inc.*, a consumer purchased decking materials from a retailer and later sued the manufacturer, alleging breach of express warranty. The warranty at issue was provided by the manufacturer and explicitly stated that it ran to the "'individual residential homeowner' purchasing the product" and that "[t]his warranty gives you specific legal rights." 2012 WL 7832713, at *2

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

(W.D. Ky. Mar. 5, 2012). The district court noted that while Kentucky law normally requires buyer-seller privity to maintain a cause of action for breach of warranty, it "anticipate[d] that Kentucky courts would hold that an express warranty action could be maintained in [a] case, **where the manufacturer's written warranty expressly stated that its warranty ran directly to the intended consumer**, the 'individual residential homeowner.'" *Id.* at *3. Thus, *Levin* held that plaintiff's claim could proceed "based on Plaintiff's position as the expressly intended beneficiary of the warranty issued by Defendant." *Id.* at *4.

In *Naiser*, however, the defendant had made no representation comparable to that in *Levin*, *i.e.*, that its warranties ran directly to the intended consumer. Yet the *Naiser* court expanded *Levin's* rationale to embrace cases where the "express warranties were clearly intended for the product's consumers," even if the warranties did not "expressly state that they run directly to the intended consumers." 975 F. Supp. 2d at 739–40. This Court disagrees.

The second case, *Williams v. Volvo-White*, No. 2002-CA-001469-MR, 2003 WL 22681457, at *3 (Ky. App. Nov. 14, 2003), involved used trucks the plaintiff had purchased. *Id.* at *1. The Kentucky Court of Appeals assumed that plaintiff had privity as a subsequent purchaser so as to limit the extent of the manufacturer's warranty, which stated that the buyer's remedy is "*limited* to repair or replacement of the part or component which is determined defective in normal use." *Id.* at *3. But *Naiser* leveraged *Williams* to expand, rather than limit, the scope of liability.

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

Finally, in *Gooch v. E.I. Du Point de Nemours & Co.*, 40 F. Supp. 2d 863 (W.D. Ky. 1999), plaintiff used a herbicide he had purchased from a retailer, which allegedly caused plaintiff's corn not to produce. *Id.* at 865–67. In addition to the product label, which stated that DuPont warranted the product to be "reasonably fit for the purpose stated in the Directions for Use," plaintiff had "engaged in several conversations with DuPont's field representative . . . who informed him that [the product] was a good product to control rhizome johnson grass." *Id.* at 866–67. The court held that the disclaimers on the label did not exclude DuPont's warranty that the product was "reasonably fit" for the intended purpose of "control[ing] johnson grass . . . without harming the crop upon which it is applied." *Id.* at 869. *Gooch* does not contain the word "privity," much less any discussion of Kentucky's privity requirement. *Naiser* acknowledges as much in citing *Gooch* and included the parenthetical: "not discussing the privity requirement, but applying Kentucky law and allowing an express warranty action by a consumer against a manufacturer where no buyer-seller relationship existed but the consumer relied on warranties that were made by the manufacturer on the product's label." 975 F. Supp. 2d at 740.

In short, *Naiser* is not supported by binding precedent and is premised on overly broad interpretations of other cases applying Kentucky law. Principles of federalism, therefore, dictate that *Naiser* should not be followed.

"When sitting in diversity jurisdiction, this court must follow the controlling decision of the [forum's] highest state court. But if the 'state's highest court has not

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

25

spoken on a precise issue,' this court must follow a decision of the state appellate court, published or unpublished, 'unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *E.g.*, *Am. Tooling Ctr., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 895 F.3d 455, 460 n.1 (6th Cir. 2018) (quoting *Ziegler v. IBP Hog Mkt.*, Inc., 249 F.3d 509, 517 (6th Cir. 2001)); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 76–79 (1938); *AllState Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). The Sixth Circuit's repeated admonition in this area has long been the following:

> [F]ederal courts "must proceed with caution" when making pronouncements about state law. Sitting in diversity, [courts] are "not commissioned to take a position regarding the advisability or fairness of the state rule to be applied, but must determine the issue as would the highest court of the state." [A] [c]ourt's proper reluctance to speculate on any trends of state law applies with special force to a plaintiff in a diversity case, like this one, who has chosen to litigate his state law claim in federal court. Furthermore, "**when given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [courts] should choose the narrower and more reasonable path**."

*Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (emphasis added); *id.* at 577–78 ("[F]ederal courts sitting in a diversity case are in 'a particularly poor position . . . to endorse [a] fundamental policy innovation . . . . Absent some authoritative signal from the legislature of the courts of [the state], we see no basis for even considering the pros and cons of innovative theories . . . ." (alterations in original) (quoting *Dayton v. Peck, Stow & Wilcox Co. (Pexto)*, 739 F.2d 690, 694 (1st Cir. 1984)). *Naiser* did not adhere to these principles of federalism.

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

In the interest of federal-state comity, the Court finds that the appropriate course is to decline to expand Kentucky law based on speculation regarding trends in the law and perceptions of fairness. As such, the Kentucky Supreme Court's strict application of the privity requirement applies here.

Accordingly, because Simpson is not in privity with Champion, Simpson's express warranty claim (Count III) must be dismissed. *Waterfill*, 215 F. App'x at 405 (holding that "privity existed only between [defendant] and its distributors, who were the immediate purchasers of its [product]."); *see also Loeb v. Champion Petfoods USA, Inc.*, No. 18-cv-494, 2018 WL 2745254, at *8 (E.D. Wisc. Aug. 7, 2018) (dismissing class action express warranty claim on a motion to dismiss because Wisconsin law required privity).[14]

### D.  Lolles' Breach of Express Warranty Claim (Count IV)

Unlike Kentucky, Virginia has abolished the privity requirement in actions "resulting from negligence" (Va. Code § 8.01-223) and actions involving the sale of

---

[14] *Loeb v. Champion Petfoods USA, Inc.*, No. 18-cv-494, 2018 WL 2745254 (E.D. Wisc. Aug. 7, 2018) is one of at least sixteen (16) class actions in the United States (including this one) filed against Champion in 2018. *Vado v. Champion Petfoods USA, Inc.*, No. 18-cv-07118-JCS, 2019 WL 634644, at *2 n.2 (N.D. Cal. Feb. 14, 2019) (collecting cases). The allegations in *Loeb* are virtually identical to the Complaint in this case. At the motion to dismiss stage in *Loeb*, the court allowed the Wisconsin deceptive trade practices claim to proceed, 2018 WL 2745254 at *6, but dismissed plaintiffs' claim under the Wisconsin administrative code, *id.* at *7, and dismissed plaintiffs' express warranty claim because Wisconsin law requires privity as an element. *id.* at *8. *Loeb*, however, was recently dismissed in its entirety on summary judgment. 359 F. Supp. 3d 597, 605–06 (E.D. Wisc. 2019).

goods. Va. Code § 8.2-318. The latter, as relevant here, provides that:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods . . .

Va. Code § 8.2-318. That statute effectively "preserves for remote users the warranties already enjoyed by an immediate purchaser." *Buettner v. R. W. Martin & Sons*, 47 F.3d 116, 118 (4th Cir. 1995).

Express warranties are created as provided in Va. Code § 8.2-313, which mirrors KRS § 355.2-313. Virginia law holds that "whether a particular affirmation of fact made by the seller constitutes an express warranty is generally a question of fact." *Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499, 502 (Va. 1999); *Benedict v. Hankook Tire Co.*, 295 F. Supp. 3d 632, 653 (E.D. Va. 2018). Therefore, Count IV survives Champion's motion to dismiss.

### E.      Breach of Implied Warranty (Count V)

Under Virginia and Kentucky law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." KRS § 355.2-314(1); Va. Code § 8.2-314(1). For goods to be merchantable, they must, in relevant part: (1) "pass without objection in the trade under the contract description"; (2) be "of fair average quality within the description"; (3) be "fit for the ordinary purposes for which such goods are used"; and

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

(4) "conform to the promises or affirmations of fact made on the container or label if any." KRS § 355.2-314(2); Va. Code § 8.2-314(2). In Virginia, the implied warranty of merchantability "runs from the seller to the purchaser and then through the purchaser to the ultimate user." *Goodbar v. Whitehead Bros.*, 591 F. Supp. 552, 567 (E.D. Va. 1984), *aff'd sub nom. Beale v. Hardy*, 769 F.2d 213 (4th Cir. 1985).[15]

With respect to Lolles' implied warranty claim, at this preliminary stage it cannot be said that Champion's products, in fact, "conform to the promises or affirmations of fact made on the container or label . . ." Va. Code § 8.2-314(2). As such, Lolles' claim cannot be dismissed at this time.

On the other hand, Simpson's implied warranty claim must be dismissed under Kentucky law for lack of privity. Kentucky law is clear that a plaintiff alleging "a claim based upon an implied warranty must establish that [they] enjoyed privity of contract with the defendant-seller against whom the implied warranty claim is asserted." *Sims v. Atrium Medical Corp.*, No. 4:17-cv-00160, 2018 WL 4997049, at *7 (W.D. Ky. Oct. 15, 2018) (quoting *Brown Sprinkler Corp. v. Plumbers Supply Co.*, 265

---

[15] There is one exception: "[P]rivity is required for a plaintiff to recover on a breach of implied warranty of merchantability claim for consequential economic loss damages" in a negligence action. *Robert's Farm Equip., Inc. v. William Hackett Chains, Ltd.*, No. 1:10-cv-00282, 2011 U.S. Dist. LEXIS 4851, at *12, *15–17 (E.D. Va. Jan. 4, 2011) (discussing *Beard Plumbing and Heating v. Thompson Plastics, Inc.*, 491 S.E.2d 731, 320–21 (Va. 1997); and *Pulte Home Corp. v. Parex, Inc.*, 579 S.E.2d 188, 191–93 (Va. 2003)). That exception is not implicated here because this is not a negligence action.

S.W.3d 237, 240 (Ky. App. 2007) (citing *Compex Int'l Co., Ltd. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006))); *Waterfill*, 215 F. App'x at 405 ("[C]laims for breach of express **or implied warranties may proceed only where there is privity between the parties**." (emphasis added)).

Even if this Court were to follow *Naiser* with respect to Simpson's breach of express warranty claim, the holding in *Naiser* "had no impact on the privity of contract requirement with respect to implied warranty causes of action." *Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 749 (W.D. Ky. 2014); *cf. supra* Part II.C.ii. As such, implied warranties in Kentucky do not extend beyond the buyer-seller relationship. *Compex*, 209 S.W.3d at 465; *Bosch*, 13 F. Supp. 3d at 748.

*Compex* is the last word from the Kentucky Supreme Court on the issue of privity in implied warranty claims. In *Compex*, the Kentucky Supreme Court was clear that privity is a strict requirement for implied warranty claims. There, the court considered an implied warranty claim against the manufacturer of a chair plaintiffs had purchased from a retailer, K-Mart. 209 S.W.3d at 463. The court rejected a myriad of policy arguments and underscored that the Kentucky "legislature expressly established the privity requirement." *Id.* at 465 (citing *Commonwealth ex rel. Cowan v. Wilkinson*, 828 S.W.2d 610, 614 (Ky. 1992) ("It is beyond the power of a court to vitiate an act of the legislature on the grounds that public policy promulgated therein is contrary to what the court considers to be in the public interest.")). In the end, the Kentucky Supreme Court reversed the court of appeals, and dismissed the implied

warranty claim because the plaintiffs had not purchased the chair directly from Compex. *Id.* at 463, 465; *see also Bridgefield Cas. Ins. Co. v. Yamaha Motor Mfg. Corp. of Am.*, 385 S.W.3d 430, 434 (Ky. Ct. App. 2012) (following the rule in *Compex*).

Here, as in *Compex*, there is no dispute that Simpson purchased Champion's products at various retail stores, and thus no buyer-seller relationship exists. (Doc. 29, ¶ 6). The cases Simpson cites to support the proposition that privity is not required all involved Michigan law, and therefore are inapplicable. (Doc. 35 at 19). This is because Kentucky law is well-settled: An implied warranty claim cannot proceed where privity is absent.

Accordingly, the Court will dismiss Simpson's claim under Count V.

### F.    Fraudulent Omission (Count VI)

In Count VI, Plaintiffs assert a fraudulent omission claim on the basis that Champion represented its products as containing ingredients that are "fresh or raw and preservative free" but knew and failed to disclose that the dog food is "contaminated with excessive quantities of arsenic, lead, cadmium, and mercury." (Doc. 29, ¶¶ 89–91, 93).

"Fraud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements" because fraud by omission "is grounded in a duty to disclose." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (citation and internal quotation marks omitted). A fraudulent omission

claim, however, must still be pled in accordance with Fed. R. Civ. P. 9(b).[16]

The required elements to state a claim for fraudulent omission under Kentucky and Virginia law are almost identical.[17] Under Kentucky law, a plaintiff must show: (1) "a duty to disclose the material fact at issue"; (2) failure to disclose; (3) reliance; and (4) damages. *Morris Aviation, LLC v. Diamond Aircraft Indus.*, 536 F. App'x 558, 568 (6th Cir. 2013) (quoting *Giddings*, 348 S.W.3d at 747). Virginia law requires the same.[18] *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (noting that under Virginia law, "silence does not constitute fraud in the

---

[16] "To comport with Rule 9(b) for a fraudulent omission claim, a plaintiff must plead: '(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the fraudfeasor(s)] obtained as a consequence of the alleged fraud.'" *RQSI Global Asset Allocation Master Fund, Ltd. v. Aperçu Int'l PR LLC*, 683 F. App'x 497, 505 (6th Cir. 2017) (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)).

[17] Virginia law "recognizes 'concealment,' otherwise known as fraud by omission." *White v. Potocska*, 589 F. Supp. 2d 631, 642 (E.D. Va. 2008) (citing *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999)).

[18] Under Virginia law, "fraud by omission requires the [plaintiff] to prove by clear and convincing evidence (1) that the [defendant] deliberately concealed a material fact with intent to prevent the [plaintiff] from learning the truth, (2) that the [defendant] knew that the [plaintiff] [was] acting upon the assumption that the fact does not exist, and (3) that the [defendant] had a duty to disclose that fact." *Kuhn v. Visnic Homes, Inc.*, No. 1:16-cv-440, 2017 WL 2226718, at *9 (E.D. Va. May 22, 2017) (citing, *e.g.*, *Norris v. Mitchell*, 495 S.E.2d 809, 812–13 (Va. 1998)). "In all cases of fraud the plaintiff must prove that it acted to its detriment in actual and justifiable reliance on the defendant's misrepresentation (or on the assumption that the concealed fact does not exist)." *Bank of Montreal*, 193 F.3d at 827.

absence of a duty to disclose" and fraud by omission "always involves deliberate nondisclosure designed to prevent another from learning the truth").

Whether there exists "a duty to disclose is a matter of law for the court." *Giddings*, 348 S.W.3d at 747 (citing, *inter alia*, Restatement (Second) of Torts § 551 cmt. m (1977)). Plaintiffs' claim is doomed because Champion was under no duty to disclose the presence of naturally occurring heavy metals in its products.

Kentucky recognizes a duty to disclose in only four circumstances: "1) fiduciary relationship; 2) statutory requirement; 3) 'when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure'; and 4) 'where one party to a contract has superior knowledge and is relied upon to disclose same.'" *Morris*, 536 F. App'x at 568 (quoting *Giddings*, 348 S.W.3d at 747–48). Virginia law imposes a duty to disclose in similar limited circumstances.[19]

Here, Plaintiffs allege Champion "had a fiduciary duty to disclose" because it

---

[19] A duty to disclose may arise under Virginia law in the following situations: "(1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist"; "(2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure)" but "[o]bviously, the concealment itself cannot constitute one of these diversionary actions—then there would always be a duty to disclose," *Bank of Montreal*, 193 F.3d at 829 & n.8; or (3) if "some fiduciary or confidential relationship . . . exist[s] between the parties." *Western Capital Partners, LLC v. Allegiance Title & Escrow, Inc.*, 520 F. Supp. 2d 777, 782 (E.D. Va. 2007); *see also TC Tech Mgt. Co. v. Ceeks on Call America, Inc.*, No. 2:03–CV–714–RAJ, 2004 WL 5154906, at *5 (E.D. Va. Mar. 24, 2004) (noting that a statutory duty to disclose may also exist).

was "in a superior position of knowledge of the true state of the facts" regarding its products. (Doc. 29, ¶ 92). The Court disagrees.

First, Plaintiffs are conflating two separate scenarios that give rise to a duty to disclose. Second, although Plaintiffs allege that a fiduciary duty exists, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Indeed, Plaintiffs' legal conclusion is absurd. "[T]he duty arising from a confidential or fiduciary relationship or a duty provided by statute, are plainly inapplicable to the commercial sales transaction in this case." *Giddings*, 348 S.W.3d at 747–48. And "courts have been careful not to apply the other three circumstances so broadly as to transform everyday, arms-length business transactions into fiduciary relationships." *Morris*, 536 F. App'x at 568 (citations and internal quotation marks omitted) (observing *inter alia*, that under Kentucky law, the "superior knowledge" duty requires privity).[20] Otherwise, every manufacturer of the products at the local

---

[20] As to any duty that might arise pursuant to the other available options under Virginia law, first, the Complaint fails to state facts satisfying Rule 9(b) that show Champion made "a knowing and a deliberate decision not to disclose a material fact" (*i.e.*, the existence of heavy metals in Champion's dog food). *Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998); *see Bank of Montreal*, 193 F.3d at 829. Second, the Complaint is bereft of any allegation that Champion took "actions [to] divert [Lolles] from making prudent investigations (e.g., by making a partial disclosure)" and "[o]bviously, the concealment itself cannot constitute one of these diversionary actions—then there would always be a duty to disclose." *Bank of Montreal*, 193 F.3d at 829.

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

grocer would be in a fiduciary relationship with every consumer.

That leaves Plaintiffs' argument that Champion's package labeling "created the impression of full disclosure." (Doc. 35 at 21–22). But the representations on Champion's packaging are not the type of "partial disclosure" that gives rise to a duty to disclose every facet of the product's makeup. The fact that heavy metals naturally exist in organic proteins and in high concentrations in fish, *see* FDA Diet Study, *supra* note 4, belies Plaintiffs' logic that Champion had a duty to disclose this information.[21]

Champion did not claim that its products were free from *any* heavy metals and any inference to the contrary reads too much into Champion's representations. Rather, Champion's labeling conveys that its products are made from "biologically

---

[21] Consider the following two tables. The first table is the data from the FDA Diet Study and the second is the data from the White Paper. Both documents are cited in the Complaint and the figures below have been converted from mg/kg to ug/kg as stated in the Complaint, *i.e.*, (mg/kg) x (1,000) = (ug/kg).

|  | Chicken | Eggs | Turkey | Salmon Fillet | Tuna (canned) | **Total** |
|---|---|---|---|---|---|---|
| **Arsenic** | 3 | 0 | 6 | 293 | 999 | **1301** |
| **Cadmium** | 0.3 | 0 | 0.1 | 1 | 15 | **16.4** |
| **Lead** | 0 | 0.4 | 0 | 0 | 1 | **1.4** |
| **Mercury** | 0 | 0.1 | 0.1 | 21 | 136 | **157.2** |

|  | Champion's Dog Food |
|---|---|
| **Arsenic** | 890 |
| **Cadmium** | 90 |
| **Lead** | 230 |
| **Mercury** | 20 |

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

35

appropriate," "high quality ingredients fit for human consumption." (Doc. 29, ¶¶ 16, 66, 74). But a "company is not required to volunteer [information] simply because it makes statements about the high quality of its products and terms of its warranties." *Morris*, 536 F. App'x at 560, 569 (no duty to disclose the investigation of the company and its financial problems when sales agents boasted of the "quality and reliability" of its warranties in the course of plaintiff purchasing one of its airplanes, despite that two weeks later the company declared bankruptcy and voided the warranties). Under Plaintiffs' theory, virtually any information not included on a package's label would amount to a failure to disclose.

Moreover, it is axiomatic that "mere silence does not constitute fraud where it relates to facts open to common observation or discoverable by the exercise of ordinary diligence, or where means of information are as accessible to one party as to the other." *Giddings*, 348 S.W.3d at 749 (quoting *Bryant v. Troutman*, 287 S.W.2d 918, 920–21 (Ky. 1956)). Here, Champion publicly published—on the internet—the "White Paper" in May 2017, a year before this lawsuit was filed. Plaintiffs could readily have discovered that publication, which discloses the concentration of heavy metals in Champion's dry dog food. In addition, the FDA Diet Study Plaintiffs cite in the Complaint has been published since 2014, which clearly informs consumers that fish contains high levels of mercury and arsenic.

Thus, by ordinary diligence and attention, Plaintiffs should have known that anything containing fish might also contain high concentrations of heavy metals. "[I]t

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

is the [Plaintiffs'] own folly if [they] neglected to do so," and therefore they are "remediless." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255 (6th Cir. 2012) (quoting *Mayo Arcade Corp. v. Bonded Floors Co.*, 41 S.W.2d 1104, 1109 (Ky. 1931)); *Harris v. Dunham*, 127 S.E.2d 65, 73 (Va. 1962) ("The common law affords to everyone reasonable protection against fraud in dealing, but does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information.").

For all these reasons, Plaintiffs' fraudulent omission claim fails.

### G.     Unjust Enrichment (Count VII)

In Kentucky, to sustain a claim for unjust enrichment a plaintiff must establish three elements: "(1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of that benefit without payment for its value." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017) (quoting *Furlong Dev. Co. v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 39–40 (Ky. 2016)); *see also Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 (E.D. Va. 2007) (same under Virginia Law). Plaintiffs' claim fails on the first element.

"Kentucky courts have consistently found that the first element not only requires a benefit be conferred upon the defendant, but also that the plaintiff be the party conferring that benefit." *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011) (collecting cases); *2815 Grand Realty Corp.*

*v. Goose Creek Energy, Inc.*, No. 7:08-CV-186, 2010 WL 4313582, at *4 (E.D. Ky. Oct. 26, 2010) (requiring a direct conferral of a benefit). In other words, the plaintiff "must show that he conferred a benefit directly upon [defendants]." *Lewis v. Jones*, No. 6:17-CV-38, 2018 WL 5043773, at *5 (E.D. Ky. Oct. 17, 2018).

Virginia courts seem to follow the same rationale: An indirect benefit or a benefit to a third party is simply insufficient to sustain an unjust enrichment claim. *See, e.g.*, *Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004) ("To bring an action to recover monies received by the defendant from a third party, a plaintiff must demonstrate that he had a preexisting right to that fund.").[22]

---

[22] In *Firestone*, 485 F. Supp. 2d at 704 n.12, the court observed "even assuming plaintiff's amended complaint were read to imply that the 2006 appraisal was sent to defendants, receipt of the appraisal alone is insufficient to state a claim for unjust enrichment." The court cited a host of cases in support of this proposition. *See id.* (citing *Eckstone & Assocs. Ltd. v. Keilp*, 1995 Va. Cir. LEXIS 1404, at *3–4 (Va. Cir. 1995) (dismissing unjust enrichment claim because "[o]ne of the requirements for the application of unjust enrichment is that services were accepted by the person sought to be charged, used and enjoyed by him or her"); *Kang v. Roof*, 24 Va. Cir. 193, 195–96 (Va. Cir. 1991) (dismissing unjust enrichment counterclaim because "[a] party who fails to show that the receiver experienced enrichment, or appreciated the benefit, is fatal to a claim of unjust enrichment"); *Qualichem Inc. v. Xelera, Inc.*, 62 Va. Cir. 179, 183 (Va. Cir. 2003) (dismissing unjust enrichment claim where buyer's "voluntary" payments to third party did "not provide it with any action at law or in equity" against seller); *Park Eldenwood Assoc. v. Firestone Capital Corp.*, 26 Va. Cir. 70, 74 (Va. Cir. 1991) (dismissing unjust enrichment claim because "[w]hen the defendant has derived no right or benefit from the plaintiff, the law will not indulge in the fiction of an implied promise of the defendant to the plaintiff"). The rationale applies with equal force in the context of this case.

Here, Plaintiffs did not directly confer a benefit on Champion. Plaintiffs purchased Champion's products from retailers. The fact that "[Champion] charged [premium] prices for [dog food]; retailers then passed the cost to customers; customers paid these prices; and [Champion] profited" is simply "insufficient to plead unjust enrichment." *See Commonwealth of Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016). To hold otherwise would overextend the equitable doctrine and allow every unsatisfied consumer to sue a manufacturer when they feel the value of their purchase is somehow diminished. This is contrary to the general purpose of an unjust enrichment claim, which exists to compensate for benefits conferred, not loss suffered. *See, e.g.*, *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009); *Vanhook Enters. v. Kay & Kay Contr., LLC*, 543 S.W.3d 569, 573 (Ky. 2018); *Hughes & Coleman, PLLC v. Chambers*, 526 S.W.3d 70, 74–75 (Ky. 2017); *Lofton v. Fairmont Specialty Ins. Managers, Inc.*, 367 S.W.3d 593, 597 (Ky. 2012); *see also Kern v. Freed Co.*, 299 S.E.2d 363, 364–65 (Va. 1983).

Accordingly, Plaintiffs' unjust enrichment claim will be dismissed.

## IV. CONCLUSION

The claims Simpson has asserted against Champion fail under Kentucky law. The only remaining claims in this case are those arising under Virginia law that pertain to Lolles and the proposed class of Virginia plaintiffs she intends to represent (Counts II, IV, and V). As a result, "the interests of justice" and the "convenience of the parties and witnesses" suggest that it would be appropriate to transfer this action

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Virginia, Norfolk Division.

Accordingly, the parties are hereby notified that the Court is considering a sua sponte transfer of the case based on the various factors to be weighed. *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006).

## V.   ORDER

Consistent with the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

(1) Defendants' motion to dismiss the amended complaint (Doc. 32), is **GRANTED IN PART and DENIED IN PART;**

(2) All of Plaintiff Tracy Simpson's claims (Counts I, III, V, VI, and VII), are **DISMISSED WITH PREJUDICE;**

(3) Plaintiff Danika Lolles' claims under Counts VI and VII are **DISMISSED WITH PREJUDICE**; and

(4) The parties shall file **simultaneous** briefs by **Monday, July 8, 2019,** addressing the appropriateness of transferring this action under 28 U.S.C. § 1404(a).

*Simpson* et al. *v. Champion Petfoods USA, Inc.* et al.

This 21st day of June 2019.

 Signed By:

**_William O. Bertelsman_**

**United States District Judge**